<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

WALLACE ATHILL,                    :
                                   :  Civil Action No. 06-4941 (SDW)
          Plaintiff,               :
                                   :
     v.                            :  **OPINION**
                                   :
JERRY SPEZIALE, et al.,            :
                                   :
          Defendants.              :

APPEARANCES:

    WALLACE ATHILL, Plaintiff <u>pro se</u>
    # 170999
    Passaic County Jail
    11 Marshall Street
    Paterson, New Jersey 07501-1806

WIGENTON, District Judge

    Plaintiff Wallace Athill ("Athill"), currently confined at the Passaic County Jail in Paterson, New Jersey, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a)(1998) and order the Clerk of the Court to file the Complaint.

    At this time, the Court must review the Complaint pursuant

to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Complaint should proceed in part.

## I. BACKGROUND

Plaintiff Athill complains that, on or about July 25, 2006, while he was incarcerated at the Passaic County Jail, he was shot by unknown officers during a raid of his dormitory. Athill alleges that the named defendants, Sheriff Speziale, Deputy Warden Bendl, and an unknown sergeant and S.O.R.T. officers stormed into the day room of the dormitory where plaintiff was confined. They were shouting for the inmates to get on their bunks face down, with their hands interlocked behind them, or the inmates would be fired upon. Athill states that he complied with the defendants' order. Before lying down, however, he noticed that the defendants were pointing their guns in all directions. He states that while he was going to lie down, he was shot in the lower left side of his back.

Athill also alleges that he noticed two inmates being beaten and dragged out of the dormitory by the officers. Then, the officers came back for plaintiff, handcuffed him behind his back and dragged him out as well. Athill states that the defendant

sergeant grabbed the back of plaintiff's head and banged it into the wall, telling plaintiff not to look at him. Athill was told to get on his knees, but as he was trying to do so, his legs were kicked out from under him. Plaintiff fell on his chest and another officer put his knee on plaintiff's back for about five minutes, causing pain. Plaintiff was taken to a bullpen with the other inmates who had been shot or beaten. Athill alleges that he stayed in the bullpen for three hours and then was taken back to his dormitory in his underwear by female officers. Athill alleges that his legal papers, pictures and mail were not in his dormitory when he returned. He wrote grievances to the ombudsman and to Internal Affairs, but has not received any response. (Complaint, ¶ 6).

Athill seeks an unspecified amount of money for alleged compensatory and punitive damages. (Compl., ¶ 7).

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a

defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.[1]

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must " accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be

remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

Athill brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV.   ANALYSIS

A.   Excessive Force Claim

Plaintiff's claim may be construed as an excessive force claim in violation of the Eighth and Fourteenth Amendments. Because it is not clear whether Athill is a convicted prisoner awaiting sentencing or a pretrial detainee, this Court will analyze the excessive force claim under both the Eighth Amendment standard and the due process standard under the Fourteenth Amendment.

"The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments: they cannot be ' cruel and unusual.'" Rhodes v. Chapman, 452 U.S. 337, 345 (1981). The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment. Id. at 347. The cruel and unusual punishment standard is not static, but is measured by "the evolving

standards of decency that mark the progress of a maturing society." Id. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1956)). To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The objective element questions whether the deprivation of a basic human need is sufficiently serious; the subjective component asks whether the officials acted with a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component is contextual and responsive to "'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992). The subjective component follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" See Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); Rhodes, 452 U.S. at 345. What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation. Hudson, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in Whitley v. Albers, 475 U.S. 312, 320-21 (1986)(citation omitted): "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very

purpose of causing harm.'" Quoted in Hudson, 503 U.S. at 6. " When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Id. at 9. In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than de minimis force is used. Id. at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not de minimis for Eighth Amendment purposes).

To determine whether force was used in "good faith" or " maliciously and sadistically," courts have identified several factors, including:
> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. at 321). Thus, not all use of force is "excessive" and will give rise to the level of a constitutional violation. See Hudson, 503 U.S. at 9 (it is clear that not "every malevolent touch by a prison guard gives rise to a federal cause of action"). Therefore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a

judge's chambers, violates a prisoner's constitutional rights." Id. at 9-10.

In this case, Athill alleges that he was shot by a sheriff's officer for no legitimate reason during a dormitory raid. He also claims that he was beaten and tripped maliciously. These allegations, if true, may support an inference that the defendants assaulted plaintiff maliciously for the "very purpose of causing harm," thus satisfying the subjective element of an Eighth Amendment claim. Farmer, 511 U.S. at 835-36.

In addition, it would appear that Athill may be able to satisfy the objective component because he alleges that he was shot and beaten. If true, these allegations are sufficient to suggest that Athill suffered some pain and injury and that more than de minimis force was used. Therefore, accepting these allegations by Athill as true, as required during this preliminary screening stage, the Court finds that Athill's allegations *may* be sufficient to support both the objective and subjective elements of an excessive force claim at this time. Accordingly, this claim will be allowed to proceed past the *sua sponte* screening stage at this time.

To the extent that plaintiff was a pretrial detainee at the time the incident occurred, the standard applied in an excessive force claim involving pretrial detainees differs only slightly, and in this instance, would not change this Court's ruling that

plaintiff's claim should go forward at this time. A pre-trial detainee is protected by the Due Process Clause of the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535, n.16, 545 (1979); City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983); Fuentes v. Wagner, 206 F.3d 335, 341 n.7, 9 (3d Cir.), cert. denied, 531 U.S. 821 (2000); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 n.31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

Analysis of whether a detainee or un-sentenced prisoner has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979). Fuentes, 206 F.3d at 341-42.
> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the

> alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. ...

Bell, 441 U.S. at 535-39 (citations omitted). The Supreme Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Id. at 540. Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives. Id. at 539 n.20. Nor are grossly exaggerated responses to genuine security considerations. Id. at 539 n.20, 561-62.

Under this standard, for purposes of surviving dismissal at this preliminary stage, plaintiff has adequately alleged that the defendants used excessive force against him in violation of his constitutional rights. The allegations may support a claim that plaintiff was shot and maliciously beaten by defendants for no apparent reason other than to "punish" him. There are no

allegations that plaintiff was himself attacking or provoking the defendants to shoot him in the back while he was lying down or to beat him while he was handcuffed. Under these circumstances, if true, plaintiff may be able to prove that the defendants' actions were a grossly exaggerated response. Therefore, the excessive force claim, if based on the Due Process Clause of the Fourteenth Amendment, should be allowed to proceed past the *sua sponte* screening stage.

B.  Confiscation of Property

Athill also complains that his personal property was missing when he returned to his room at the jail. Namely, plaintiff did not have his legal papers, his pictures, and his mail. He appears to be alleging that the defendants confiscated his property, but there are no direct allegations to this effect.

A pretrial detainee may be able to establish an unconstitutional deprivation of property by showing confiscation of materials either in retaliation for the exercise of constitutional rights or where, as a result, there was a denial of access to the Courts. See Hodgin v. Agents of Montgomery County, 619 F. Supp. 1550, 1553-54 (E.D. Pa. 1985). Here, there are no allegations that the loss of plaintiff's personal property was an act of retaliation by the defendants against Athill. Athill does not allege any facts to show that the general dormitory raid and subsequent loss of his personal property was

in response to any constitutionally protected activity by Athill.2

Athill also cannot show that the confiscation of his legal papers as alleged amounts to a denial of access to courts claim. The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983). See also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."

However, an inmate alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense. See Lewis v. Casey, 518 U.S. 343, at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance

facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

Here, Athill fails to allege any actual injury as a result of the alleged confiscation of his legal papers, pictures and mail. He does not allege that any litigation he may have had was terminated against him for failure to file legal papers. Plaintiff also was able to file this Complaint in a timely manner. Therefore, because plaintiff does not show actual injury, this claim for confiscation of his legal papers will be dismissed without prejudice.

Consequently, absent proof of retaliation or denial of access, Athill must demonstrate that the loss of his personal property amounted to a violation of procedural process. The Due Process Clause prohibits a state or local government entity from depriving a person of property without due process of law. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).

To analyze a due process claim, a Court conducts a familiar two-part inquiry: a Court determines whether the Plaintiff "was deprived of a protected interest, and if so, what process was his due." Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982);

see also Holman v. Hilton, 712 F.2d 854, 858 (3d Cir. 1983).

Property loss caused by the intentional acts of government officials do not give rise to a procedural due process claim under § 1983 where a post-deprivation remedy satisfying minimum procedural due process requirements is available under state law. See Parratt v. Taylor, 451 U.S. 527 (1981) (overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); see also Zinermon v. Burch, 494 U.S. 113, 115 (1990); Hudson v. Palmer, 468 U.S. 517 (1984); Holman, 712 F.2d at 856.[3] The New Jersey Tort Claims Act ("NJTCA"), N.J. STAT. ANN. § 59:1-1 et seq., provides a post-deprivation judicial remedy to persons who believe they were deprived of property at the hands of the State or local government. In this case, Athill's recourse after the confiscation of his personal property would be a common-law tort action against the defendants under the New Jersey Tort Claims Act, N.J. STAT. ANN. § 59:1-1 et seq. Plaintiff does not indicate that he attempted to file a complaint pursuant to the New Jersey Tort Claims Act.

Accordingly, the Court finds that the NJTCA was available to Athill as a matter of law as a remedy for his alleged property loss at the hands of defendant. See Holman, 712 F.2d at 857; Asquith v. Volunteers of America, 1 F. Supp.2d 405, 419 (D.N.J. 1998), aff'd 186 F.3d 407 (3d Cir. 1999). Because the NJTCA provided all the process that was due for Athill's alleged

property loss, this deprivation of property claim should be dismissed for failure to state a claim upon which relief may be granted.

V.   CONCLUSION

For the reasons set forth above, plaintiff's claim alleging loss of personal property will be dismissed for failure to state a cognizable claim for relief under § 1983.  See 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  To the extent that plaintiff's loss of property claim intended to state a First Amendment retaliation claim or denial of access to courts claim, such claims will be dismissed without prejudice.  Finally, plaintiff's excessive force claim will be allowed to proceed past this preliminary screening stage.  An appropriate order follows.

SUSAN D. WIGENTON
United States District Judge

Dated: October 31, 2006

---

1   Plaintiff should also be aware that the PLRA requires Courts to determine whether a prisoner has, on three or more prior occasions while incarcerated or detained in any facility, brought an action or appeal in federal court that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted.  If so, the prisoner is precluded from bringing an action in forma pauperis unless he or she is under imminent danger of serious physical injury.  28 U.S.C. § 1915(g).  It does not appear that plaintiff has incurred any strikes to date.

2   To the extent that Athill may be able to show that the actions by defendants were in direct retaliation against Athill in filing grievances or other constitutionally protected activity, this Court will allow plaintiff to amend his complaint pursuant to Fed.R.Civ.P. 15.

3   In Logan, the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random,

unauthorized action. 455 U.S. at 435-36. But see Tillman v. Lebanon Co. Correctional Facility, 221 F.3d 410, 421 n.12 (3d. Cir. 2000)(citing United States v. James Daneil Good Real Property, 510 U.S. 43, 53 (1993))(in "extraordinary situations" such as routine deduction of fees from a prisoner's account even without authorization, post-deprivation remedies may be adequate). Here, there is nothing in the Complaint to suggest that officials confiscated Athill's personal property pursuant to established state procedure; nor has this Court located any such established procedure.